A05A1029. CROFT v. FAIRFIELD PLANTATION PROPERTY
OWNERS ASSOCIATION, INC. et al.
(623 SE2d 531)

PHIPPS, Judge.

William Croft appeals, pro se, from the trial court's order granting summary judgment to Fairfield Plantation Property Owners Association, Inc., Kristen Bonner,[1] and Don Harmon[2] and denying Croft's motion for summary judgment. Croft contends the trial court's order requiring him to pay homeowners association fees should be reversed because his purchase of the subject properties in a tax sale did not convey fee simple title obligating him to pay homeowners association fees. For the reasons set forth below, we disagree and affirm.

---

[1] Bonner is an employee of the Association.
[2] Harmon is a member of the Association's Board of Directors.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. [Cit.] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." [Cit.][3]

The undisputed evidence shows that, on June 6, 2000 and July 5, 2000, Croft purchased a total of seven residential lots in the Fairfield Plantation subdivision at a tax sale resulting from unpaid property taxes.[4] These lots are subject to restrictive covenants running with the land that require the payment of homeowners association assessments for maintenance of the common areas in the subdivision. One of the covenants provides that:

Every person upon acquiring title, legal or equitable, to any lot in the Subdivision[ ] shall become a member of the [Fairfield Plantation] Property Owners Association, Inc.,[5] a Georgia non-profit corporation, herein referred to as "Association" and as long as he is the owner of any such lot, he must remain a member of the Association. Such membership is not intended to apply to those persons who hold an interest in any lot merely as security for the performance of an obligation to pay money, e.g., mortgages, deeds of trust, or real estate contract purchases. However, if such a person should realize upon his security and become the real owner of a lot, he will then be subject to all the requirements and limitations imposed in these Restrictions on owners of lots within the Subdivision and on members of the Association, including those provisions with respect to payment of annual charges.

When Croft refused to pay the Association's annual charges for the lots, it hired a collection agency and later filed liens against the properties. Croft then filed suit against the Association, Bonner, and Harmon seeking $1 million in damages for extortion and removal of the liens. The Association counterclaimed for the unpaid assessments, late charges, interest, and its attorney fees. The trial court granted summary judgment to the defendants on Croft's claims and

---

[3] *McCoy v. West Bldg. Materials &c.*, 232 Ga. App. 620 (502 SE2d 559) (1998).

[4] See OCGA § 48-4-1 et seq.

[5] The name of the Association was changed in 1982 from Treasure Lake of Georgia Property Owners Association, Inc. to Fairfield Plantation Property Owners Association, Inc.

also granted summary judgment to the Association on its counterclaim for past due assessments, late charges, interest, and attorney fees.

1. Croft contends that the title he acquired in the tax sale was insufficient to trigger membership in the Association and an obligation to pay annual assessments. In support of this argument, Croft points to the statutory right of redemption granted to his predecessors in title.[6] OCGA § 48-4-40 provides that title can be restored to specified predecessors through payment of the statutory amount of redemption within 12 months from the date of the sale, or at any time before the right to redeem is foreclosed by the tax sale purchaser giving of the notice under OCGA § 48-4-45. Another mechanism by which the purchaser at a tax sale can cut off the right of redemption is through adverse possession of the property for the requisite number of years after the tax deed is recorded.[7] Croft argues that since he did not exercise his right to cut off the right of redemption through either (1) the giving of notice 12 months after the tax sale; or (2) adversely possessing the property, he does not have fee simple title and is not obligated to pay the Association's assessments.

While we agree with Croft's contention that he did not obtain a fee simple absolute title, he did receive title sufficient to trigger automatic membership in the Association. In *Patterson v. Florida Realty & Finance Corp.*,[8] the Supreme Court held that "the title which the purchaser acquires in consequence of a tax sale is not a perfect, fee-simple title, but is a defeasible title which terminates upon redemption within the time prescribed by statute. . . ."[9] A defeasible fee

> "may endure forever, but may also be brought to an end by a stated event. It has the attributes of a fee interest, such as general inheritability, but is not a fee simple due to the fact that it may be defeased. The event may be the continuance or end of some situation, the happening or failure of happening of some occurrence, or the performance or nonperformance of some condition." P. 12, "Defeasible Fees," by Wm. H. Agnor. The essentials of a defeasible fee are that the devisee must first take an estate in fee, which may run

---

[6] See OCGA § 48-4-40.

[7] OCGA § 48-4-48. See also *Blizzard v. Moniz*, 271 Ga. 50, 54 (518 SE2d 407) (1999).

[8] 212 Ga. 440 (93 SE2d 571) (1956).

[9] Id. at 442 (1) (b).

indefinitely, subject to being defeated by some contingency which may occur after the devisee's estate has become vested. [Cit.][10]

In *Patterson*, the Supreme Court concluded that the purchaser at a tax sale "acquires an interest in the property even during the time within which it might be redeemed, which is sufficient to render him liable for taxes accruing upon the property."[11]

We find that this interest is also sufficient to render the purchaser liable for homeowners association assessments. A contrary holding would result in a situation in which a tax deed purchaser could, by inaction, keep the redemption period alive indefinitely, reap the benefit of property value increases, and avoid the obligation to pay maintenance expenses which increase the value of the property. It would be inequitable to allow a tax deed holder to obtain the benefit of restrictive covenants that require the homeowners association to maintain the surrounding amenities such as roads and common areas, all of which increase the value of the property purchased at the sale, without having to pay a proportional share of the cost of these benefits for an indefinite period of time.

2. To the extent Croft makes constitutional challenges to the Georgia Property Owners' Association Act,[12] we find that they are waived because he failed to raise them below and obtain a ruling by the trial court. "Appellate courts exist to review asserted error but where the [party] makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review."[13]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 27, 2005 —
RECONSIDERATION DENIED NOVEMBER 10, 2005.

William D. Croft, *pro se.*

*Weinstock & Scavo, Stephen A. Winter, Louis R. Cohan, Robert M. Sneed, Jr., Weissman, Nowack, Curry & Wilco, Derek W. Johanson,* for appellees.

---

[10] *McDonald v. Suarez*, 212 Ga. 360, 362 (2) (93 SE2d 16) (1956).

[11] *Patterson*, supra.

[12] OCGA § 44-3-220 et seq.

[13] *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).