**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 16, 2017**

# In the Court of Appeals of Georgia

A16A1762. HARVEST ASSETS, LLC v. NORTHLAKE MANOR
       CONDOMINIUM ASSOCIATION.

ANDREWS, Judge.

The sole issue in this appeal is whether the term "special assessments" in OCGA § 48-4-42 encompasses condominium assessments. We hold that it does, and reverse the trial court's opposite conclusion.

The operative facts are not disputed. On December 3, 2013, the appellant, Harvest Assets, LLC, paid $7,600 for a tax deed to a unit in the Northlake Manor Condominium Association. Subsequently, Harvest Assets also paid $5,000 to the Northlake Manor Condominium Association earmarked for condominium assessments due after the tax sale. The Association, which claimed a lien on the subject property for unpaid condominium assessments, sought to redeem the property,

and eventually obtained a quitclaim deed from the actual taxpayer. Harvest Assets initially disputed the Association's right to redeem but ultimately provided an itemized pay-off amount to the Association: $7,600 for the tax deed purchase; $1,520, representing a 20 percent premium on the tax deed purchase price; $5,000 for the condominium assessments paid; and $1,000, representing a 20 percent premium on the $5,000 condominium assessments.

The Association tendered only $9,120, covering the tax sale price plus the 20 percent premium on that payment, but denied any obligation to reimburse the condominium assessments under the redemption statute. Harvest Assets rejected that tender, and the Association commenced this action to force acceptance of the tender and delivery of a deed of redemption. This appeal follows the trial court's grant of summary judgment for Northlake Manor and denial of summary judgment for Harvest Assets.

OCGA § 48-4-42, in effect at the time of the events in this case, provided:

The amount required to be paid for redemption of property from any sale for taxes as provided in this chapter, or the redemption price, shall with respect to any sale made after July 1, 2002, be the amount paid for the property at the tax sale, as shown by the recitals in the tax deed, plus any taxes paid on the property by the purchaser after the sale for taxes, plus any special assessments on the property, plus a premium of 20 percent

2

of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made and 10 percent for each year or fraction of a year thereafter.

This Court has previously decided that a tax deed purchaser is obligated to pay homeowner/condominium assessments while holding title to the subject property. See *Croft v. Fairfield Plantation Property Owners Assn.*, 276 Ga. App. 311 (623 SE2d 531) (2005). In so deciding, we expressed concern that a contrary determination could result in a windfall profit for a tax deed purchaser, i.e., "a situation in which a tax deed purchaser could, by inaction, keep the redemption period alive indefinitely, reap the benefit of property value increases, and avoid the obligation to pay maintenance expenses which increase the value of the property." Id. at 314 (1).

In *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 894 (792 SE2d 680) (2016), the Supreme Court noted that as the enforcement and collection of taxes through the sale of a taxpayer's property is such a harsh remedy, "the policy has been to favor the rights of the property owner in the interpretation of such laws." But balancing the policy favoring the taxpayer's right to redeem, is a compelling policy that a tax deed purchaser should be made whole upon the taxpayer's redemption of

3

the property. See *Herrington v. Old South Investment Co.*, 222 Ga. 428 (150 SE2d 623) (1966).

If it is appropriate to obligate a tax deed purchaser to pay homeowner/condominium assessments in order to prevent the possibility of a windfall profit to that purchaser, it is equally appropriate to obligate the redeeming taxpayer to make that purchaser whole by reimbursing any such assessment payments. Accordingly, we conclude the term "special assessments" in OCGA § 48-4-2 includes private assessments on the property and is not limited to governmental assessments as held by the trial court.

The trial court thus erred in granting summary judgment for Northlake Manor and denying summary judgment for Harvest Assets on this issue. However, the record shows that part of Harvest Assets's $5,000 payment was applied towards interest and attorney fees assessed for its late payment of some of the assessments, and Harvest Assets may not be reimbursed for any such interest and properly assessed attorney fees. Accordingly, the trial court must now determine to what extent Northlake Manor was entitled to assess attorney fees under OCGA § 13-1-11 (a), including any applicable limitations provided in subsections (1) or (2).

*Judgment reversed and case remanded. Doyle, C. J., and Ray, J., concur.*

4